IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PIERRE GRAHAM, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] ACTING | : | NO. 20-1447 |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Pierre Graham ("Graham" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of

the Commissioner of Social Security's ("Commissioner") decision denying his claims for

Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act and for

Supplemental Security Income ("SSI") pursuant to Title XVI of the Act.[2]  For the reasons that

follow, Graham's Request for Review will be granted in part and this case will be remanded to

the Commissioner for further proceedings consistent with this Memorandum Opinion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Graham was born on January 21, 1967.  R. at 1995.[3]  He has at least a high school

---

[1]   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the Defendant in this action.  No further action need be taken to continue this case pursuant to Section 405(g) of the Social Security Act.  42 U.S.C. § 405(g).

[2]    In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment.  See Doc. Nos. 3, 4.

[3]    Citations to the administrative record will be indicated by "R." followed by the page number.

education, id. at 2049, and is able to communicate in English, id. at 2047.  His past relevant work experience was as a stock clerk and department manager.  Id. at 27.  Graham protectively filed an application for DIB benefits on October 18, 2016 and for SSI benefits on May 10, 2017, id. at 17, alleging that he became disabled on January 1, 2012, id. at 17, 1996, 2000, due to: epilepsy, asthma, and migraines, id. at 2048.  His applications were initially denied on September 6, 2017.  Id. at 1951-60.  Graham then filed a written request for a hearing on November 8, 2017, id. at 1966-67, and an Administrative Law Judge ("ALJ") held a hearing on his claims on October 18, 2018, id. at 624-36.  Graham did not appear at the hearing.  Id. at 17.  On January 2, 2019, the ALJ issued an opinion finding that Graham was not disabled.  Id. at 14-33.  Graham filed an appeal with the Appeals Council.  On June 16, 2020, the Appeals Council denied Graham's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner.  Id. at 1-6.  Graham then commenced this action in federal court.

## II.      THE ALJ'S DECISION

In her decision, the ALJ found that Graham had not engaged in substantial gainful activity since his alleged onset date of January 1, 2012.  Id. at 20.  The ALJ determined that Graham suffered from the severe impairments of epilepsy, asthma, depressive, bipolar and related disorders, and a learning disorder.  Id.  The ALJ concluded that neither Graham's individual impairments, nor the combination of his impairments, met or medically equaled a listed impairment.  Id. at 20-22.  The ALJ found that, during the relevant period, Graham had the residual functional capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following non-exertional limitations: he can never climb ladders, ropes, or scaffolds.  He must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation, and he must avoid all exposure to hazards such as moving machinery and unprotected heights.  He can understand, remember and carry out short simple instructions and make simple workplace decisions.

> He can perform simple, routine tasks on a sustained basis to complete an
> eight-hour workday, with standard breaks.  He can persist and focus on
> goal-oriented tasks, not at a production-rate pace.  He can respond to
> changes in the work setting that are occasional, or gradually introduced.  He
> should have no more than occasional interaction with coworkers so he does
> not distract them.  He can interact with the general public and supervisors
> on an occasional basis, as well.

Id. at 22.  Based on this RFC determination, and relying on the vocational expert ("VE") who

appeared at the hearing, the ALJ found that there were jobs that existed in significant numbers in

the national economy that Graham could perform, such as hospital food service worker,

industrial cleaner, housekeeping cleaner, and apparel stock checker.  Id. at 28-29.  Accordingly,

the ALJ concluded that Graham was not disabled.  Id. at 29.

## III.   GRAHAM'S REQUEST FOR REVIEW

In his Request for Review, Graham contends that: (1) the ALJ erred by failing to explain

why his epilepsy did not meet or medically equal Listing 11.02; and (2) the RFC assessment was

not supported by substantial evidence.[4]

## IV.   SOCIAL SECURITY STANDARD OF REVIEW

The role of the court in reviewing an administrative decision denying benefits in a Social

Security matter is to uphold any factual determination made by the ALJ that is supported by

"substantial evidence."  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971);

Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d

Cir. 1985).  A reviewing court may not undertake a de novo review of the Commissioner's

---

[4]   Because the Court remands this matter based on the ALJ's failure to provide a "clear and
satisfactory explication of the basis on which" her decision that Graham did not meet Listing
11.02 rests, Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), it is not necessary to address
Graham's RFC argument.  Indeed, remand may produce a different result on this claim, making a
discussion of it now moot.  See, e.g., Bruce v. Berryhill, 294 F. Supp. 3d 346, 363 (E.D. Pa.
2018).

decision in order to reweigh the evidence.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review.  See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  The court's review is plenary as to the ALJ's application of legal standards.  Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period.  42 U.S.C. § 1382c(a)(3)(A); accord id. § 423(d)(1).  As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 404.1509 [or § 416.909], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have

4

an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v) (references to other regulations omitted).

V.   **DISCUSSION**

   A.   **The ALJ Failed to Adequately Address Whether Graham Met the Criteria of Listing 11.02 for Epilepsy**

Graham argues that the ALJ erred in finding that neither his individual impairments, nor the combination of his impairments, met or medically equaled Listing 11.02 for epilepsy.  Pl.'s Br. (Doc. No. 10) at 3-5; Pl.'s Reply Br. (Doc. No. 12) at 1-4.  For the reasons discussed below, this Court finds that the ALJ provided no meaningful analysis to support her conclusion that Graham did not meet Listing 11.02 and consequently, remand on this issue is warranted.

   1.   **The Listing Criteria**

Listing 11.02 requires that a claimant have epilepsy, "documented by a detailed description of a typical seizure," 20 C.F.R. pt. 404, subpt. P, app.1 § 11.02, "preferably [from] a medical professional, who has observed at least one of [a claimant's] typical seizures," id. § 11.00(H2).  To the extent a claimant experiences more than one kind of seizure, there must be a detailed description of each type of seizure.  Id.  Listing 11.02 further requires that a claimant satisfy the A, B, C, or D criteria, which are as follows:

   A. Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment; or

5

B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or

C. Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:

1. Physical functioning; or

2. Understanding, remembering, or applying information; or

3. Interacting with others; or

4. Concentrating, persisting, or maintaining pace; or

5. Adapting or managing oneself; or

D. Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:

1. Physical functioning; or

2. Understanding, remembering, or applying information; or

3. Interacting with others; or

4. Concentrating, persisting, or maintaining pace; or

5. Adapting or managing oneself.

Id. § 11.02 (references to other regulations omitted); see id. § 11.00H1a for a description of "generalized tonic-clonic seizures" referenced in the A and C criteria and § 11.00H1b for a description of "dyscognitive seizures" referenced in the B and D criteria.

## 2.   The ALJ's Lack of Analysis as to Listing 11.02

It is well settled that an ALJ is required to provide a "clear and satisfactory explication of the basis on which [he or she] rests" a decision. Cotter, 642 F.2d at 704. That explanation must be sufficient to allow a reviewing court to determine that the ALJ's decision was supported by

6

substantial evidence. <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 119-20 (3d Cir. 2000). As part of that explanation, "[a]n ALJ is required to consider and discuss all probative evidence detailing whether a claimant suffers from an impairment." <u>Rodriguez v. Astrue</u>, No. 10-CV-3203, 2012 WL 5494659, at *3 (E.D. Pa. Apr. 2, 2012), <u>report and recommendation adopted</u>, No. 10-3203, 2012 WL 5503425 (E.D. Pa. Nov. 13, 2012). "Although the ALJ need not explicitly weigh every item of medical evidence in the file, he [or she] must explain his [or her] rejection of competent evidence supporting Plaintiff's claims." <u>Berrios-Vasquez v. Massanari</u>, No. 00-CV-2713, 2001 WL 868666, at *6 (E.D. Pa. May 10, 2001) (citing <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3d Cir. 2001)); <u>see also</u> <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir. 1994) (An ALJ "must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition."). "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." <u>Cotter</u>, 642 F.2d at 706-07. In the absence of such an explanation, a reviewing court is "unable to determine whether the ALJ discredited the [evidence] or simply ignored [it]." <u>Rivera v. Astrue</u>, 9 F. Supp. 3d 495, 506 (E.D. Pa. 2014); <u>see also</u> <u>Cotter</u>, 624 F.2d at 705 (failure to indicate which evidence ALJ has rejected leaves court unable to "tell if significant probative evidence was not credited or simply ignored"). An "ALJ must provide 'a discussion of the evidence' and an 'explanation of reasoning' for his [or her] conclusion sufficient to enable meaningful judicial review." <u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009) (quoting <u>Burnett</u>, 220 F.3d at 119-20).

In the instant matter, meaningful judicial review of the ALJ's conclusion that Graham did not meet Listing 11.02 is not possible because the ALJ's analysis on this issue is sparse, vague and

conclusory.  The ALJ's sole reasoning for why Graham did not meet or medically equal the requirements of Listing 11.02 was as follows:

> the undersigned has considered the claimant's . . . neurological impairment under listing 11.02, but concludes that the objective medical evidence does not support a conclusion that his impairments are of listing-level severity.
>
> . . . .
>
> Additionally, the medical evidence does not reveal diagnoses of acute neurological impairment with resulting brain tumors, persistent disorganization of motor function, or sensory abnormalities.

R. at 20.  In reaching this conclusion, however, the ALJ provided no substantive analysis, nor did she cite to the requirements of Listing 11.02.  Furthermore, Listing 11.02 criteria do not require a claimant to have "diagnoses of acute neurological impairment with resulting brain tumors, persistent disorganization of motor function, or sensory abnormalities."[5]  Compare id. at 20, with 20 C.F.R. pt. 404, subpt. P, app.1 § 11.02; see also 20 C.F.R. pt. 404, subpt. P, app.1 § 11.00D(1) ("All listings in this body system, *except for 11.02 (Epilepsy)* . . . include criteria for disorganization of motor function." (emphasis added)).  Even assuming that these criteria were somehow relevant, the ALJ failed to explain how they pertained to her finding that Graham did not meet the requirements of Listing 11.02.

Here, the record is replete with references to relatively frequent seizure activity during 2016 through 2018.  See, e.g., R. at 2102, 2109-10, 2151, 2156, 2166, 2175, 2234, 2268, 2304, 2323, 2326, 2332, 2347, 2352, 2356, 2359, 2364, 2389, 2396-97, 2416, 2452, 2456, 2498, 2502, 2521, 2527, 2572, 2614, 2620, 2679, 2699, 2721.  Yet there was no substantive discussion by the ALJ as to whether she considered or rejected this evidence when determining whether Graham's

---

[5]    It appears that the ALJ may have conflated the criteria for Listing 11.02 with the criteria for other neurological disorders contained in Listing 11.00.

seizures met any of the requirements set forth in Listing 11.02.  Consequently, on remand, an ALJ must conduct a de novo review of the record to determine whether Graham meets the requirements of Listing 11.02.[6]

## VI.   **CONCLUSION**

For the reasons set forth herein, Plaintiff's Request for Review will be granted in part and this case will be remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion.  An appropriate order follows.

Dated: July 29, 2021

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE

---

[6]    Graham contends that he is entitled to an award of benefits in this action.  Pl.'s Br. at 8; Pl.'s Reply Br. at 5.  An award of benefits only is appropriate, however, "when no evidentiary questions remain and the outcome of the case is dictated as a legal matter."  Monagle v. Astrue, No. 06-CV-3911, 2007 WL 2571453, at *4 (E.D. Pa. Aug. 24, 2007); accord Hoff v. Astrue, No. 08-cv-00218, 2009 WL 229764, at *12 (E.D. Pa. Jan. 30, 2009).  In this case, consistent with its directive that the case be remanded, the Court is unable to conclude that no evidentiary questions remain.